UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY VARHOLA, | ) | CASE NO. 5:11CV1665 |
| Plaintiff, | )<br>)<br>) | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | )<br>) | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | )<br>)<br>)<br>) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

Mary Varhola ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Income Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the decision of the Commissioner is affirmed.

I.  **PROCEDURAL AND FACTUAL HISTORY**

On June 26, 2006, Plaintiff filed an application for DIB alleging disability due to complications from diabetes mellitus beginning June 1, 2002. ECF Dkt. #11 at 137-139.[1] Plaintiff met the insured status requirements through June 30, 2002. The SSA denied Plaintiff's application initially and on reconsideration. *Id.* at. 108-109. Plaintiff filed a request for an administrative hearing. *Id.* at 119. On July 6, 2009, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id.* at 73-107. At the hearing, the ALJ accepted the testimony of Plaintiff, Ted S. Macy, a vocational expert ("VE") and Franklin H. Plotkin, M.D., a medical expert ("ME"). *Id.* On April 9, 2010, the ALJ issued a Decision denying benefits. *Id.* at 65-72. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 57-59.

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

On August 10, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On February 3, 2012, Plaintiff filed a brief on the merits. ECF Dkt. #12. On March 19, 2012, Defendant filed a brief on the merits. ECF Dkt. #14. Plaintiff filed a reply brief on April 2, 2012. ECF Dkt. #15.

**II.**     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that there was "insufficient evidence of a medically determinable impairment, or combination of medically determinable impairments that significantly limited [her] ability to do basic work-related activities for any continuous 12-month period that included the period from June 1, 2002, the alleged onset date, through June 30, 2002, her date of last insured." ECF Dkt. #11 at 68. The ALJ explained that most of the medical evidence in the record pre-dated Plaintiff's onset date (evidence of pain in her hip, shoulder, and lumbar spine) or post-dated Plaintiff's date of last insured (worsening eyesight, degenerative disc disease, headaches, syncope, and neuropathy in her hands and elsewhere). *Id.* at 70. Plaintiff's counsel acknowledged "the difficulties with [the record in this case] and explained that he "had extensive conversation with [Plaintiff] and her husband about that." *Id.* at 84.

The ALJ ultimately concluded that there was insufficient evidence of disability during the required time frame, writing, "I considered whether it was possible – and determined that it was not possible – to extrapolate from the evidence in the record either forward or backward in time as far as necessary to show that the impairments mentioned above were 'medically determinable,' and imposed as many limits on [Plaintiff's] ability to do basic work related activities, from June 1, 2002, the alleged onset date, through June 30, 2002, her date last insured, as they were and did on the date of the evidence in question." *Id.* at 71.

III.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* The

claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even

if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.    ANALYSIS

The ME acknowledged at the hearing that he had only considered Plaintiff's medical records dating from April of 2004 to the present. The ME testified that he could not form an opinion regarding Plaintiff's medical condition in June of 2002 based upon the medical records beginning in 2004. *Id.* at 89. However, he conceded that he did not have Plaintiff's complete medical record. *Id.* at 91. The following colloquy took place between the ALJ and Plaintiff's counsel:

> ALJ: All of these records, these additional records of – from the late 90s – there's really nothing from the turn of the century. Most of the – most of the records that I – that you submitted, according to one of the summaries I have here – were either years before June of 2002, or long after June of 2002.
>
> ATTY: I would agree with that. The records from the 90's were submitted to – and really, in support of her testimony that these problems began in the 90's. There is a period of time, probably in the late, or the early 200 [sic], where there didn't appear to be a lot of medical attention, but she was seeing Dr. – let's see – she sees Dr. – is it Tsai. . . .
>
> ALJ: Yes, F-1 is the only Exhibit that I see here that has – for the time period, is what we're looking for, according to the summary. Now, I'm –
>
> ATTY: Those records aren't particularly helpful though.
>
> ALJ: Are there other records around the turn of the century that can be gotten?
>
> ATTY: Well, no, because the only way that would be is if the doctors didn't give us complete records, but, you know, all the doctors that she saw supplied us with evidence, and I have to work under the assumption that they're complete records. She saw Dr. Tsai from '99 to 2006. That's F-20, but I don't know what – now, if you're looking for something right around the date last insured, I don't know if there's anything right around that date. My concern is that you asked the question of the medical expert about inferring her condition some date prior to the last Exhibit that he saw and, obviously, it's an incomplete record, and there is evidence prior to 2002 that she was treating for something the doctor didn't mention. She was treating for RSD I the 90's [sic].

*Id.* at 92-93.

As a consequence, the ALJ determined that the ME should review the medical records that pre-date Plaintiff's onset date. Before reviewing the records, the ME testified that it would be "very difficult" to determine when Plaintiff's medical impairments from diabetes became severe impairments for the purposes of DIB. *Id.* at 95. The ME stated, "Well, as I said before, into 40 years of being a diabetic, it's reasonable to – and not surprising to – find that she's got a neuropathy and a retinopathy. One cannot predict this, but it's not surprising that she has it after that period of time, but it would be difficult, if not impossible, to predict what would happen in two years, or three years, when the records go back to 1997 or 1998." *Id.* at 97. However, the ME ultimately testified that it "might be [a useful exercise]" if he reviewed Plaintiff's medical records from the late 1990's. *Id.* The ME observed, "There's a lot riding on that," and the ALJ responded, "I – I agree but, you know – and if it's a useful exercise, that's one thing. If it's not useful, that's another thing." *Id.* at 97-98. Accordingly, the ALJ ordered the ME to review Plaintiff's additional medical records[2] and provide his analysis through a series of interrogatories. In the interrogatories, the ME identifies diabetes mellitus, diabetic neuropathy, diabetic retinopathy, and vitreous hemorrhage in response to Interrogatory #6, which asks, "Please specify the claimant's impairments, if any established by the evidence." *Id.* at 788. The ME cited directly to the record, however, all of the medical evidence he cited was dated between 2006 and 2008, with the exception of an emergency room visit on April 5, 2001 when Plaintiff was treated for a blister on her foot that developed after Plaintiff accidentally spilled coffee on her foot. *Id.* The ME cited the emergency room report as evidence that Plaintiff suffered from diabetes mellitus and diabetic neuropathy in April of 2001. *Id.* at 194. The report indicates that Plaintiff was insulin-dependent, but had not taken insulin for approximately one year prior to the accident with the coffee. *Id.* She was treated with a Unasyn IV and Humulin and given a prescription for Augmentin. *Id.*

In response to Interrogatory #7, "Do any of the claimant's impairments established by the medical evidence, combined or separately, meet or equal any impairment described in the Listing

---

[2]At the hearing, the ALJ indicated that he had only reviewed F1-F14. ECF Dkt. #91.

of Impairments," the ME marked the "equals" box and noted, "Diabetes Mellitus, Type I, complicated by diabetic retinopathy, radicular degeneration, vitreous hemorrhage, diabetic neuropathy, diabetic ulcers." *Id.* at 789.

Interrogatory #8 asks, "If the answer to Question #7 is "Yes," please specify the following: The specific listing(s) referenced; The evidence that satisfies the listing requirements; and the earliest date the listing(s) is met or equaled and whether the listing continues to be met or equaled. If you opine that the listing was met or equaled before the earliest evidence in the file, please provide an explanation below." *Id.* The ME wrote:

> April '01 – 9:08A NEUROPATHY – BILATERAL, DAIBETIC ULCERS VIBRATORY SENSE ↓, SENSORY LOSS, PAIN
>
> 9.08C RETINITIS PROLIFERANS VITREOUS HEMORRHAGE O.S.

*Id.*

Section 9.00 of the Listings, captioned "Endocrine Disorders," was amended on June 7, 2011. The version of Section 9.08 in effect in June of 2002, captioned "Diabetes mellitus," reads, in its entirety:

> With:
>
> A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or
>
> B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or pCO2 or bicarbonate levels); or
>
> C. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.

20 CFR Pt. 404, Subpt. P, App. 1, Section 9.08 (2002).

In this appeal, Plaintiff contends that the ALJ's failure to address the notation in Interrogatory #8, which indicated that Plaintiff's impairments equaled the Listings in April of 2001, constitutes error. ECF Dkt. #12 at 801. To the contrary, the ALJ directly addressed the opinion of the ME, writing:

-6-

> In [the ME's] opinion, [Plaintiff] had neuropathy, retintis proliferans, and vitreous hemorrhage that medically equaled the criteria stated in Section 9.08A and C of the Listing of Impairments. However, the evidence in the record that he cited to support his conclusions was all from 2004 and after, long after June 30, 2002, [Plaintiff's] date last insured. Nowhere in his interrogatory responses did [the ME] express the opinion that [Plaintiff's] condition would have needed so much time to develop that they would have constituted a severe impairment or severe impairments, and/or would have met or medically equaled the criteria for any Listed Impairment, at any time from June 1, 2002, the alleged onset date, through June 30, 2002, [Plaintiff's] date last insured.

ECF Dkt. #11 at 71.

Despite the fact that Interrogatory #8 specifically requests that the ME specify "the evidence that satisfies the listing requirements," the ME provided no citations to the record. However, the ME specifically refers to portions of the record in his response to Interrogatory #6, but he references medical records from 2006 to 2008. To the extent that the ME cited to Plaintiff's emergency room visit in April of 2001, the ME did not offer any testimonial evidence that Plaintiff's alleged impairment met the requirements of the Listing. To the extent that he concluded that Plaintiff's neuropathy and retinitis proliferans equaled the Listing, all of the ME's references to the record regarding Plaintiff's eye problems post-date June 30 2002. Therefore, the ALJ correctly concluded that, without any testimony to support the conclusion that Plaintiff's ailments existed to the degree required in June of 2002, there is no evidence that her problems constituted severe impairments or that her limitations prevented her from working.

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

DATE: June 13, 2012

                                      */s/George J. Limbert*
                                      GEORGE J. LIMBERT
                                      UNITED STATES MAGISTRATE JUDGE